UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Abu B. Kargbo</u>

        v.                          Civil No. 15-cv-315-PB

<u>Warden, New Hampshire</u>
<u>State Prison</u>


## **REPORT AND RECOMMENDATION**


After a jury trial in the Hillsborough County Superior
Court, Abu Kargbo was convicted on one count of aggravated
felonious sexual assault, in violation of N.H. Rev. Stat. Ann.
("RSA") § 632-A:1, I(b) (2007).  He is currently serving a
sentence in the New Hampshire State Prison.  Appearing <u>pro se</u>,
Kargbo petitions for a writ of habeas corpus.  <u>See</u> 28 U.S.C.
§ 2254.  Before this magistrate judge for a report and
recommendation is respondent's motion for summary judgment (Doc.
No. 67).  Petitioner has not filed a formal objection to
respondent's motion for summary judgment, but he has filed
several other pleadings, including three motions seeking his
release (Doc. Nos. 76, 77, 84).  For the reasons that follow,
respondent's motion for summary judgment (Doc. No. 67) should be
granted, in part, and petitioner's motions (Doc. Nos. 76, 77,
84) should be denied.

**Background**

In its order affirming Kargbo's conviction, the New Hampshire Supreme Court ("NHSC") described the evidence adduced at trial.  Evidence showed that on August 7, 2009, the victim went to a restaurant and then to the Amber Room, a nightclub in Nashua.  Over the course of the evening, she drank three beers and two mixed drinks.  Subsequently, she remembered dancing at the Amber Room at 12:30 a.m., but the next thing she remembered was waking up in the hospital.

As for Kargbo's connection with the victim, evidence showed that at about 3:00 a.m., Officer Andrew Roy of the Nashua Police Department ("NPD") saw Kargbo carrying the victim through a parking lot.  When Officer Roy encountered Kargbo and the victim, the victim's pants were unbuttoned and only partially zipped.

Officer Roy had the victim transported to Southern New Hampshire Medical Center.  When she arrived there, she was nearly unconscious.  Emergency room personnel found dirt and plant matter in the victim's genital area, and expert testimony established that semen from her vaginal samples matched Kargbo's DNA.

On August 8, 2009, _i.e._, the morning after Officer Roy's

2

interaction with Kargbo and the victim, Kargbo was interviewed
by Detective Keith Inzenga of the NPD.  At the start of the
interview, Det. Inzenga told Kargbo that he was "not under
arrest or anything like that," Admin. App'x at 79 (Doc. No. 67),
and Kargbo confirmed that he had "voluntarily responded [to the
NPD] on [his] own free will," id.  According to the transcript
of the interview, as reported on an NPD Voluntary Statement
Form, the interview started at 7:05 a.m. and finished at 9:02
a.m.[1]  On several occasions, Det. Inzenga left Kargbo by himself
in the interview room, and at one point, he told Kargbo that
after the interview was over, he would drive him to wherever he
was staying.  During the interview, Kargbo told Det. Inzenga
that he had engaged in sexual intercourse with the victim.

On March 11, 2010, Justice Ryan of the Nashua District
Court signed a warrant for Kargbo's arrest.  Later that month,
Kargbo was arrested in Florida.  See Sentencing Tr. (Oct. 22,
2012).

Based upon the evidence presented at trial, Kargbo was
found guilty of the variant of aggravated felonious sexual

---

[1] In addition, petitioner has submitted to this court a copy
of a motion in limine from his trial in which he stated, as a
fact, that "[o]n the morning of August 8, 2009, Mr. Kargbo went
to the Nashua Police Department, where Detective Inzenga
interviewed him for two hours."  Addendum (Doc. No. 27) 7 of 16.

assault that makes it unlawful to "engage[] in sexual penetration with another person . . . [w]hen the victim is physically helpless to resist."

After he was convicted, Kargbo filed a notice of mandatory appeal in which he listed four issues: (1) Did the trial court err in permitting State's witness Pamela Keefe, a SANE nurse, to testify at trial?; (2) Did the trial court err in finding Mr. Kargbo competent to stand trial?; (3) Did the trial court err in finding Mr. Kargbo competent – post-trial – for sentencing?; and (4) Did the trial court err in denying the defendant's motion to dismiss for insufficient evidence?

After Kargbo filed his notice of appeal, through counsel, but before he filed his brief in the NHSC, he filed two pro se motions in the trial court.  Judge Nicolosi treated those motions as a petition for a writ of habeas corpus, construed the petition as asserting a claim of ineffective assistance of counsel, and identified the following purported errors by trial counsel: (1) failing to file a motion to suppress the statement that Kargbo gave to Det. Inzenga; (2) failing to show Kargbo the entire video recording of his interview with Det. Inzenga prior to trial; (3) failing to cross-examine Det. Inzenga; (4) failing to move for a directed verdict; (5) failing to object to the

jury instructions; and (6) instructing Kargbo not to testify.[2]
In addition, according to Judge Nicolosi, during the hearing on
his motion, Kargbo

> raised two additional arguments that, 1. the jury
> selection resulted in unfit jurors being among the
> twelve who rendered the verdict; and 2. the testimony
> of the SANE nurse [i.e., Pamela Keefe] was improperly
> admitted because she was unqualified.

Admin. App'x at 34 (Doc. No. 68).  In an order dated November
27, 2013, Judge Nicolosi denied Kargbo's motion in large part,
but deferred ruling on the sixth issue until after she had
conducted a hearing.

After Judge Nicolosi issued her November 27 order, Kargbo
filed a pro se motion to dismiss the case against him, raising
arguments about the admission of testimony from nurse Keefe,
racial bias, his competence to stand trial, sufficiency of the
evidence, and the racial composition of his jury.  With regard
to the racial composition of his jury, Kargbo made no factual
allegations, but cited Batson v. Kentucky for the proposition
that "the Equal Protection Clause forbids the prosecutor to
challenge potential jurors solely on account of their race," 476
U.S. 79, 89 (1986).  In an order dated January 23, 2014, Judge

---

[2]Kargbo also claimed that the court instructed him not to
testify.  Judge Nicolosi rejected that claim as contradicted by
the trial record.

Nicolosi denied Kargbo relief on the issue she had previously deferred ruling on and denied his new motion to dismiss, explaining that the motion "raise[d] the same issues previously addressed by the court and, to the extent it can be said that any new issues are raised, they are without foundation in the record." Admin. App'x at 57 (Doc. No. 68). There is no indication in the record before this court that Kargbo ever appealed Judge Nicolosi's orders of November 27, 2013, and January 23, 2014.

Next, Kargbo filed his appellate brief with the NHSC, again through counsel. In it, he raised a single issue: whether the State had introduced sufficient evidence to support his conviction. The NHSC affirmed Kargbo's conviction in an order dated December 9, 2014. See State v. Kargbo, No. 2012-0784 (N.H. Dec. 9, 2014).

Kargbo filed his petition for a writ of habeas corpus in this court in August 2015. In it, he asserts 12 claims. In January 2016, Kargbo was granted a stay of this proceeding so that he could go back to the state courts to pursue any claims in his petition that had not yet been adjudicated there.

About two weeks later, Kargbo filed two pleadings with the NHSC each captioned "Petitioner['s] Motion to Exhaust His State Remedies" and a third pleading captioned "Petitioner['s] Motion

6

to Proceeding in this Honorable Court." See Addendum at 1, 5, 10 (Doc. No. 26).  In one of the motions to exhaust, petitioner argued that the statement he gave to Det. Inzenga was admitted at trial in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).  In the second motion to exhaust, petitioner raised a claim that he had received ineffective assistance of counsel.  And in his third motion, he appears to have elaborated on his ineffective-assistance claim and also to have claimed constitutional violations based upon the racial composition of his jury.  Specifically, he referred to both his equal-protection rights under Batson and his Sixth Amendment "right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community," Berghuis v. Smith, 559 U.S. 314, 319 (2010) (citing Taylor v. Louisiana, 419 U.S. 522 (1975)).  While petitioner's three motions were pending before the NHSC, he filed what appear to be three largely similar motions in the superior court.[3]

---

[3]The superior court docket lists three pleadings with captions identical to the captions of the three motions that petitioner had previously filed in the NHSC, but while the record before this court includes all three of the motions that petitioner filed with the NHSC, it appears to include only one of the three motions that he later filed in the superior court. The motion to exhaust that petitioner filed in the superior court is substantially similar to, but not identical to, one of the two motions to exhaust that he had filed in the NHSC.

In an order dated June 24, 2016, the NHSC construed Kargbo's three motions as a petition for original jurisdiction, and denied it.  Then, in an order dated September 8, 2016, Judge Temple of the superior court denied all three of the motions before him on grounds of res judicata, and further ruled that even if not barred by res judicata, those motions had no basis in law or fact.  In January 2017, petitioner filed a notice of appeal with the NHSC, and in an order dated March 8, 2017, the NHSC declined it.

## Standard

A federal court may grant habeas corpus relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Procedurally, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

Substantively, when a prisoner brings a claim in federal court that "was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d),

> [f]ederal habeas relief may not be granted . . . unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court; or that it "involved an unreasonable application of" such law; or that it "was based on an unreasonable determination of the facts" in light of the record before the state court.

Harrington v. Richter, 562 U.S. 86, 100 (2011) (citations omitted).  Notwithstanding the deferential standard of review that normally applies to petitions for habeas corpus relief, if a claim "has not been adjudicated on the merits in state court," it is subject to de novo review.  See Jaynes v. Mitchell, 824 F.3d 187, 192 (1st Cir.) (citation omitted), cert. denied, 137 S. Ct. 312 (2016).


## **Discussion**

### **I.   Respondent's Motion for Summary Judgment (Doc. No. 67)**

#### A.   Claim 1

In Claim 1, petitioner asserts that the trial judge was biased against him, in violation of his Sixth and Fourteenth Amendment rights to due process and a fair trial.  However, petitioner does not identify: (1) any statement, action, or

ruling by the trial judge that demonstrated bias; (2) any
contemporaneous objection to any such statement, action, or
ruling; or (3) any decision by a state court on any issue
related to purported bias on the part of the trial judge.
Accordingly, as to Claim 1, respondent's motion for summary
judgment should be granted.

    B.   <u>Claim 2</u>

In Claim 2, petitioner asserts that a defective reasonable-
doubt instruction deprived him of his rights to due process and
a fair trial under the Sixth and Fourteenth Amendments.  The
court does not agree.

At the conclusion of Kargbo's trial, Judge Nicolosi gave
various jury instructions, including these on reasonable doubt:

> Under our constitutions, all defendants in
> criminal cases are presumed to be innocent unless
> proven guilty beyond a reasonable doubt by the State.
> . . .  The Defendant enters this courtroom as an
> innocent person, and you must consider him to be an
> innocent person unless and until the State convinces
> you beyond a reasonable doubt that he is guilty of
> every element of the alleged offense.  And also, in
> this case, the State must prove that the alleged
> victim did not consent.
>
> If, after all of the evidence and arguments, you
> have a reasonable doubt as to the Defendant having
> committed any one or more of the elements of the
> offense, and again, in this case, that the alleged
> victim did not consent to having sexual intercourse,
> then you must find him not guilty.  A reasonable doubt
> is just what the words would ordinarily imply.  The
> use of the word reasonable means simply that the doubt

must be reasonable rather than unreasonable.  It must
be a doubt based on reason.  It is not a frivolous or
fanciful doubt, nor is it one that can easily be
explained away.  Rather, it is such a doubt based upon
reason as remains after consideration of all of the
evidence that the State has offered against it.

The test you must use in this case is this.  If
you have a reasonable doubt as to whether the State
has proven any one or more of the elements of the
crime charged, and in this case, that the alleged
victim did not consent to having sexual intercourse,
you must find the Defendant not guilty.

Trial Tr. vol. III, 395:20-396:21.

The trial record discloses no contemporaneous objection to
any of the jury instructions, including those related to
reasonable doubt.  Kargbo did not mention the jury instructions
in his notice of appeal to the NHSC; nor did he brief any issue
related to them.  In the affidavit he submitted in support of
his state habeas petition, Kargbo stated: "Defendant believes
that the State of New Hampshire used jur[y] instructions against
defendant."  Admin. App'x (Doc. No. 68) 23.  Judge Nicolosi
treated that statement as an actual claim and addressed it this
way: "The defendant failed to set out a specific complaint in
his pleadings nor did he fill out the complaint during the
hearing."  Id. at 44.  Thus, it is far from clear that
petitioner has properly exhausted a constitutional claim based
upon the jury instructions at his trial.  But, even if the claim
has not been exhausted, the court is permitted to deny it on the

11

merits, see 28 U.S.C. § 2254(b)(2), and the district judge should do just that.

In the context of jury instructions, "the only question for [a federal court reviewing a § 2254 petition] is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Carpio v. Wall, 269 F. Supp. 3d 4, 7 (D.R.I. 2017) (citation, brackets, and quotation marks omitted). The reasonable-doubt instruction that Judge Nicolosi gave the jury did not "infect" Kargbo's trial at all, much less infect it to the point where he was denied due process. Accordingly, as to Claim 2, respondent's motion for summary judgment should be granted.

C.   Claim 3

In Claim 3, petitioner asserts that he was deprived of his Sixth and Fourteenth Amendment rights to due process and a fair trial because he was denied the opportunity to be present at all critical stages of his trial. However, petitioner does not identify: (1) any critical stage of his trial that he was denied the opportunity to attend; (2) any contemporaneous objection to any purported exclusion from his trial; or (3) any decision by a state court on an issue related to his purported exclusion. Accordingly, as to Claim 3, respondent's motion for summary judgment should be granted.

12

D.   <u>Claim 4</u>

In Claim 4, petitioner asserts that because he is African American and was convicted by an all-white jury, he was deprived of his Sixth and Fourteenth Amendment rights to due process, equal protection, and a fair trial before a jury made up of a representative cross-section of the community.  The court does not agree.

"The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community."  <u>Berghuis</u>, 559 U.S. at 319.

> [T]o establish a prima facie violation of the Sixth Amendment's fair-cross-section requirement [a criminal defendant] must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

<u>Id.</u> at 319 (quoting <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979)).  Petitioner bases his claim upon allegations that he is African American and his jury was all white, but neither his petition nor any of his subsequent filings say anything about the racial makeup of the venire from which his jury was drawn nor does he identify any means by which members of his racial

group were systematically excluded from the venire.

Accordingly, as to Claim 4, respondent's motion for summary

judgment should be granted.

    E.   <u>Claim 5</u>

In Claim 5, petitioner asserts that the State improperly

excluded members of his race from the jury, in violation of his

due-process, equal-protection, and fair-trial rights under the

Sixth and Fourteenth Amendments.  The court does not agree.

"[T]he Equal Protection Clause forbids the prosecutor to

challenge potential jurors solely on account of their race."

<u>Batson</u>, 476 U.S. at 89.  As the <u>Batson</u> Court went on to explain:

> [A] defendant may establish a prima facie case of
> purposeful discrimination in selection of the petit
> jury solely on evidence concerning the prosecutor's
> exercise of peremptory challenges at the defendant's
> trial.  To establish such a case, the defendant first
> must show that he is a member of a cognizable racial
> group, and that the prosecutor has exercised
> peremptory challenges to remove from the venire
> members of the defendant's race.  Second, the
> defendant is entitled to rely on the fact, as to which
> there can be no dispute, that peremptory challenges
> constitute a jury selection practice that permits
> "those to discriminate who are of a mind to
> discriminate."  Finally, the defendant must show that
> these facts and any other relevant circumstances raise
> an inference that the prosecutor used that practice to
> exclude the veniremen from the petit jury on account
> of their race.  This combination of factors in the
> empaneling of the petit jury . . . raises the
> necessary inference of purposeful discrimination.

14

476 U.S. at 96 (citations omitted).  As for how a defendant

might establish an inference of purposeful discrimination, the

Court suggested that, among other things, a defendant could rely

upon "a 'pattern' of strikes against black jurors included in

the particular venire," id. at 97, or "the prosecutor's

questions and statements during voir dire examination and in

exercising his challenges," id.

Turning from the applicable law to the facts of this case,

while it is not entirely clear from the transcript of jury

selection, it would appear that five individuals were struck

from the jury as a result of peremptory challenges by one side

or the other.  See Jury Selection Tr. (Nov. 28, 2011) 54:12-15.

The jury selection transcript includes no information on the

races of the jurors who were struck, and Kargbo's counsel raised

no objections to the State's presumed use of peremptory

challenges.  Thus, the prosecutor was never called upon to

explain the basis for his peremptory challenges.  Finally, apart

from making several conclusory assertions that members of his

race were excluded from his jury, petitioner identifies no

factors that might support an inference that the State engaged

in purposeful discrimination against members of Kargbo's race

when using its peremptory challenges.  Accordingly, as to Claim

5, respondent's motion for summary judgment should be granted.

F.    Claim 6

In Claim 6, petitioner asserts that his conviction violated his Fourteenth Amendment right to due process because actions by the trial court and the State denied him exculpatory evidence.[4] Petitioner does not identify: (1) any exculpatory evidence that he was purportedly denied; or (2) any decision by the trial court that resulted in the denial of exculpatory evidence. Accordingly, as to Claim 6, respondent's motion for summary judgment should be granted.

G.    Claim 7

In Claim 7, petitioner asserts that "[t]rial prosecutors failed to turn[] over []relevant pre-trial statements and testimony by . . . prosecution witnesses," Pet. at 6 (Doc. No. 3), an assertion that has been construed as a claim the State

---

[4]The actual substance of Claim 6 is not easy to discern from the record.  In the motion to exhaust filed in Superior Court, petitioner listed, as one of his five prayers for relief:

> Issue finding of fact and rulings of law on this motion to order state to disclose all criminal back ground check of Melvin Campbell, Kent Snyder, Nicoholas Mecum, Sonia Mecum, the victim, and Sheleka Wilson.

Addendum (Doc. No. 26) at 4.  None of those people, other than the victim, testified at Kargbo's trial, and Kargbo does not indicate how their criminal records, or the victim's, would qualify as exculpatory evidence.

16

violated Kargbo's Fourteenth Amendment right to due process by

failing to turn over prosecution witnesses' pretrial statements

and testimony.  This issue was not addressed in Kargbo's direct

appeal, his collateral attack on his conviction, or any of the

three pleadings that petitioner filed in the superior court and

the NHSC in an attempt to exhaust his claims.  Thus, it does not

appear that Claim 7 has been properly exhausted.  But even so,

the court may deny an unexhausted claim on the merits, see 28

U.S.C. § 2254(b)(2), and the district judge should dispose of

Claim 7 that way.

       As for the substantive law that applies to Claim 7:

       "'The suppression by the prosecution of evidence
       favorable to an accused upon request violates due
       process where the evidence is material either to guilt
       or to punishment, irrespective of the good faith or
       bad faith of the prosecution."  Wearry v. Cain, 136 S.
       Ct. 1002, 1006 (2016) (quoting Brady v. Maryland, 373
       U.S. 83, 87 (1963)).  To succeed on a § 2254 claim
       under Brady, a petitioner must show that the
       undisclosed evidence "is sufficient to undermine
       confidence in the verdict."  Wearry, 136 S. Ct. at
       1006.

McGrath v. Warden, N.H. State Prison, No. 14-cv-353-JD, 2016 WL

3945159, at *6 (D.N.H. July 19, 2016).  Here, petitioner has not

identified either the specific witnesses at issue or evidence

from their statements that he was denied to his detriment.  So,

necessarily, he has not indicated how the purportedly suppressed

evidence was material to guilt or punishment nor has he

17

indicated how that evidence might be favorable to him.
Accordingly, as to Claim 7, respondent's motion for summary
judgment should be granted.

    H.    Claim 8

    In Claim 8, petitioner asserts that he was denied his Sixth
and Fourteenth Amendment right to counsel when he was not
allowed to represent himself in his direct appeal.  Respondent
argues that Claim 8 is waived, unexhausted, and meritless.
Claim 8 should be denied on the merits.  This is the reason why:

> The Sixth and Fourteenth Amendments of our
> Constitution guarantee that a person brought to trial
> in any state or federal court must be afforded the
> right to the assistance of counsel before he can be
> validly convicted and punished by imprisonment.  In
> Faretta v. California, 422 U.S. 806 (1975), we decided
> that the defendant also "has a constitutional right to
> proceed without counsel when he voluntarily and
> intelligently elects to do so."  Although that
> statement arguably embraces the entire judicial
> proceeding, we also phrased the question as whether a
> State may "constitutionally hale a person into its
> criminal courts and there force a lawyer upon him,
> even when he insists that he wants to conduct his own
> defense."  Our conclusion in Faretta extended only to
> a defendant's "constitutional right to conduct his own
> defense."  Accordingly, our specific holding was
> confined to the right to defend oneself at trial.  We
> now address the different question whether the
> reasoning in support of that holding also applies when
> the defendant becomes an appellant and assumes the
> burden of persuading a reviewing court that the
> conviction should be reversed.  We have concluded that
> it does not.

<u>Martinez v. Court of Appeal</u>, 528 U.S. 152, 154 (2000) (footnote and citations omitted).  Accordingly, because Kargbo had no constitutional right to represent himself on appeal, respondent's motion for summary judgment should be granted as to Claim 8.

      I.   <u>Claim 9</u>

    In Claim 9, petitioner asserts that his conviction violated his rights under the Fifth and Fourteenth Amendments because inculpatory statements he made to the police while subject to a custodial interrogation were admitted at trial, even though the police did give him a <u>Miranda</u> warning, and he did not knowingly or voluntarily waive his rights to remain silent and to have an attorney present during that interrogation.  The court does not agree.

    "Under the familiar rule of <u>Miranda v. Arizona</u>, a suspect who is subject to 'custodial interrogation' must first be informed of his Fifth Amendment privilege against self-incrimination and his right to an attorney to safeguard that privilege."  <u>Rivera v. Thompson</u>, 879 F.3d 7, 13 (1st Cir. 2018) (citations omitted).  However:

> <u>Miranda</u>'s protections [<u>only</u>] apply once "a person has been taken into custody or otherwise deprived of his freedom in any significant way."  <u>Beckwith v. United States</u>, 425 U.S. 341, 347 (1976).  "In determining whether an individual was in custody," [a

court must] assess "all of the circumstances
surrounding the interrogation," with the "ultimate
inquiry" being "whether there was a formal arrest or
restraint on freedom of movement of the degree
associated with a formal arrest."  Stansbury v.
California, 511 U.S. 318, 322 (1994) (per curiam)
(internal quotation marks and alterations omitted).

Rivera, 879 F.3d at 14 (parallel citations omitted).  In a

recent case that, like this one, involved an interview with a

suspect at a police station, the First Circuit explained:

Swan's voluntary decision to meet at the stationhouse
strongly suggests that she was not "in custody" for
the purposes of Miranda.  See McCown v. Callahan, 726
F.2d 1, 6 (1st Cir. 1984) (Breyer, J.) (finding
interaction with law enforcement non-custodial because
the "defendants had come to the station voluntarily,"
"were told that they were not under arrest," and "left
the station undisturbed").

United States v. Swan, 842 F.3d 28, 31 (1st Cir. 2016).

Here, it is clear that Det. Inzenga did not give Kargbo

Miranda warnings during the interview he conducted on August 8.

But, apart from repeatedly asserting that the interview lasted

eight hours when the record evidence is that it lasted only two,

petitioner makes no effort to establish that his interview was a

custodial interrogation that required Miranda warnings.

Furthermore, there is nothing in the transcript of the interview

or anywhere else in the record to suggest that the August 8

interview was a custodial interrogation for Miranda purposes.

To the contrary, at the start of the interview, Kargbo confirmed

20

that he had "voluntarily responded [to the NPD] on [his] free will," Admin. App'x (Doc. No. 68) at 78; Det. Inzenga expressly told Kargbo that he was "not under arrest or anything like that," id.; and during the interview, Det. Inzenga told Kargbo that after the interview was over, he would drive him to a friend's house.  Under those circumstances, Kargbo was not in custody.  See Swan, 842 F.3d at 31.  Because Kargbo was not in custody during his interview on August 8, Miranda warnings were not necessary to render the statements he gave Det. Kargbo admissible at his trial.  See Rivera, 879 F.3d at 13 (explaining that "[t]he remedy for a violation of Miranda's 'prophylactic rules, in the ordinary case, is the exclusion of evidence impermissibly gathered as a result of the violation'") (quoting Johnston, 871 F.3d at 58).  Accordingly, as to Claim 9, respondent's motion for summary judgment should be granted.

     J.   Claim 10

     In Claim 10, petitioner asserts that "his arrest [was] illegal for want of probable cause, and an arrest warrant," Pet. (Doc. No. 3) at 7, an assertion that has been construed as a claim that Kargbo was subjected to a warrantless arrest, not based on probable cause, in violation of his Fourth and Fourteenth amendment rights.  However, petitioner provides no details about the arrest upon which Claim 10 is based.  In the

21

discussion of Claim 10 in his second petition, Kargbo refers to the exclusion of evidence obtained as a result of an unlawful arrest, which suggests that Claim 10 arises from the events of August 8, 2009, and the interview that he gave to Det. Inzenga, which was not custodial.  The only arrest documented in the record is Kargbo's arrest in Florida, in March 2010.  That arrest took place <u>after</u> Judge Ryan had issued a warrant for it, and there is no indication in petitioner's pleadings or anywhere in the record that the 2010 arrest ever led to the collection of any evidence.  Accordingly, as to Claim 10, respondent's motion for summary judgment should be granted.

   K.   <u>Claims 11 and 12</u>

   Kargbo raises twelve claims in his petition.  In his motion for summary judgment, respondent makes two arguments, but does not brief the reasons for granting summary judgment on Claims 11 and 12.  First, he asserts, in a heading, that "Claims 1 through 10 and Claim 12 are waived," Resp't's Mem. of Law (Doc. No. 67-1) at 12, and then he explains, in the text that follows, that "[t]he petitioner did not raise claims 1 through 10 at trial, in his notice of appeal, or in his direct appeal," <u>id.</u>  While the heading mentions Claim 12,[5] the text does not, and neither the

---

   [5]In Claim 12, petitioner asserts that State's closing argument included improper statements of personal opinion, in

heading nor the text says anything about Claim 11.[6]

Respondent's second argument is headed: "Claims 1 through 10 and 12 are without merit."  Resp't's Mem. of Law (Doc. No. 67-1) at 13.  However, like his first argument, respondent's second argument says nothing about Claims 11 or 12.

In the Order issued this date, the court has directed petitioner to file a motion for summary judgment addressing Claims 11 and 12 within thirty days, or to move the court to extend or vacate that deadline, before that deadline expires. When respondent briefs the reasons for judgment as a matter of law as to Claims 11 and 12, the court will address those arguments.  But for the moment, as to Claims 11 and 12, respondent's motion for summary judgment should be denied.

## II.  **Petitioner's Motions (Doc. Nos. 76, 77, 84)**

Kargbo has filed three motions seeking relief on claims in his § 2254 petition (Doc. Nos. 76, 77, 84).  Document No. 76

---

violation of his Fourteenth Amendment right to due process.

[6]In Claim 11, petitioner asserts that he was deprived of the effective assistance of trial counsel, in violation of his rights under the Sixth Amendment, because trial counsel: (1) did not move to suppress, or object to the admission of, either his statement to Det. Inzenga or the swabs and clothing taken from the victim; (2) presented evidence that bolstered the State's case; (3) did not object to improper jury instructions; and (4) did not investigate and present mitigating evidence at his sentencing.

seeks Kargbo's release, but asserts no factual basis or legal
arguments upon which such relief could be premised, and should
therefore be denied.

The second motion (Doc. No. 77) inquires as to the status
of petitioner's request for release, and, along with Document
No. 84, asserts that there is insufficient evidence to support
his conviction.  The NHSC in Kargbo's direct appeal concluded
that the evidence was sufficient to support the jury's verdict.
See Kargbo, No. 2012-0784, slip op. at 4.  That decision is not
contrary to pertinent Supreme Court law, see, e.g., Jackson v.
Virginia, 443 U.S. 307, 332 (1979) (due process/sufficiency of
evidence standard), and is reasonable in light of the evidence
in the record.  Accordingly, petitioner's claims regarding the
sufficiency of the evidence do not warrant the relief requested
in Document Nos. 77 and 84.

Kargbo further asserts in Document No. 77 that the judge
and prosecutors in his case were biased and discriminated
against him because of his race.  Kargbo's assertion of the
trial judge's alleged bias is the subject of Claim 1, as to
which summary judgment should be entered for the respondent for
reasons stated in this Report and Recommendation, supra.  Kargbo
points to no record evidence to support his assertions of racial
bias as to any participant in his prosecution.  Accordingly, the

24

relief requested in Document No. 77 should be denied.

In Document No. 84, petitioner requests a pardon and provides a string of cases that involve claims of trial judge bias, jury selection claims, claims of ineffective assistance of counsel, and <u>Miranda</u> violation claims.  This court does not have jurisdiction to pardon petitioner, for reasons stated in respondent's objection (Doc. No. 85).  Furthermore, the arguments and legal citations in Document No. 84, to the extent they relate to Claim 9 (alleging a <u>Miranda</u> violation), Claims 4 and 5 (alleging jury selection issues), and Claim 11 (alleging ineffective assistance of counsel), are not grounded in references to any pertinent record evidence.  Accordingly, the relief sought in Document No. 84 should be denied.

## Conclusion

For the reasons detailed above, respondent's motion for summary judgment, Doc. No. 67, should be granted as to Claims 1-10, but denied as to Claims 11 and 12.  The three motions filed by petitioner (Doc. Nos. 76, 77, 84) should be denied.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  <u>See</u> Fed. R. Civ. P. 72(b)(2).  The 14-day period may be extended upon motion.  Failure to file a specific written objection to the

Report and Recommendation within the specified time waives the right to appeal the district court's order.  See <u>Santos-Santos v. Torres-Centeno</u>, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge


February 21, 2018

cc:   Abu B. Kargbo, pro se
      Elizabeth C. Woodcock, Esq.

26