UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Abu B. Kargbo

v.                                    Case No. 15-cv-315-PB

Warden, New Hampshire
State Prison

## REPORT AND RECOMMENDATION

After a jury trial in the Hillsborough County Superior
Court, Abu Kargbo was convicted on one count of aggravated
felonious sexual assault, in violation of N.H. Rev. Stat. Ann.
§ 632-A:2, I(b) (2007).  That statute makes it unlawful to
"engage[] in sexual penetration with another person . . . [w]hen
the victim is physically helpless to resist."  Kargbo is
currently serving a sentence of 10 to 20 years in the New
Hampshire State Prison.  Appearing pro se, he petitions for a
writ of habeas corpus.  See 28 U.S.C. § 2254.

Before this magistrate judge for a report and
recommendation are: (1) respondent's motion for summary judgment
on the two claims that remain in this case (Doc. No. 89);[1] and
(2) ten motions filed by petitioner, seeking a variety of relief
(Doc. Nos. 100 to 109).  For the reasons that follow, the

---

[1]Petitioner originally asserted twelve claims, but ten of
them were dismissed in an order dated March 16, 2018 (Doc. No.
99).

district judge should grant respondent's motion for summary judgment (Doc. No. 89), deny petitioner's motions (Doc. Nos. 100, 101, 102, 103, 104, 105, 106, 107, 108, 109), and decline to issue a certificate of appealability.

## Background

Much of the relevant background is described in the report and recommendation dated February 21, 2018 (Doc. No. 87) that the district judge later approved (Doc. No. 99).  Accordingly, this section describes only those matters that are relevant to the two claims that remain, i.e., a claim of ineffective assistance of counsel, with subparts (Claim 11), and a claim that the prosecutor made inappropriate statements of personal opinion during her closing argument (Claim 12).

At about 3:00 a.m. on August 8, 2009, Officer Andrew Roy of the Nashua Police Department ("NPD") encountered Kargbo carrying a woman through a parking lot.  She was foaming at the mouth and unresponsive.  Her pants were unbuttoned and partially unzipped.  Officer Roy transported the woman to Southern New Hampshire Medical Center ("SNHMC"), where hospital personnel used a sexual-assault evidence kit to collect evidence from her.

At Kargbo's trial, the State entered into evidence the victim's sexual-assault evidence kit which included, among other things: (1) vaginal swabs containing samples taken from her; and

(2) the clothing she was wearing when Officer Roy found her with Kargbo.  Kargbo's counsel did not object to the admission of the kit used to collect evidence from the victim.  In addition, the State introduced expert testimony that semen from the victim's vaginal swabs contained DNA that matched Kargbo's DNA, and introduced evidence that when the victim was examined at SNHMC, dirt and plant material were found in her genital area.

Also at trial, the State played for the jury a recording of the interview that NPD Detective Keith Inzenga conducted with Kargbo.  During the interview, Kargbo told Det. Inzenga that he: (1) did not have sex with the victim, Admin. App'x at 97, 102, 103-04, 115, 117, 119, 124 (Doc. No. 68); (2) could not remember whether he had sex with the victim, id. at 128, 129; (3) might have had sex with the victim in a bathroom at the Amber Room, id. at 129, 130, 131; (4) did have sex with the victim in the men's room at the Amber Room, id. at 132, 133, 136, 139-40, 151; (6) did not have sex with the victim outside, id. at 130, 133; and (7) might have had sex with the victim outside, id. at 134, 141, 148, 150, 151.

During the interview, Det. Inzenga asked Kargbo about grass stains on the knees of his pants.  Kargbo told him that he had stained his pants while playing Frisbee with a man named Dean Schwankert, which is the same thing he had told Officer Roy when Roy had asked about the grass stains.  Schwankert, however,

testified that he had broken his back in 2003, was on
disability, was unable to run or jump, and had no memory of
playing Frisbee with Kargbo in August 2009.

The prosecutor's closing argument included the following
statements:

> You . . . have to answer certain questions to
> solve this case.  Those [are] why did the Defendant
> . . . lie about the grass stains [and] why did he lie
> about having sex [with the victim]. . .
>
>        . . . .
>
> [O]fficer [Roy] asked him about the green stains on
> his pants, on his knees.  When asked how he got those,
> he said he was playing Frisbee with a friend, but we
> all know that's not true.  You heard Dean Schwankert
> testify that he was in no condition to play Frisbee at
> that time and that he didn't play Frisbee with the
> Defendant.
>
>        . . . .
>
>        He [Kargbo] also talks to Detective Inzenga about
> the grass stains.  And he tells him about Dean.  Tells
> him where he lives, how to find him.  And again, you
> heard the testimony.  That's a lie.  He didn't play
> Frisbee with Dean.  He told you that.
>
>        . . . .

Trial Tr. vol. IV, 417:21–418:2, 423:6–11, 427:9–13.  Then,
after recounting the contradictory statements that Kargbo had
made to Det. Inzenga about whether he had sex with the victim,
and where, the prosecutor continued:

> Well, ladies and gentlemen, how many stories does
> the Defendant have to tell.  He says they didn't have
> sex, then it was consensual sex on the bathroom floor,
> then he doesn't remember doing it outside, that it

could have happened and that they both might not
remember.

Trial Tr. vol. IV, 430:2-6.  The prosecutor went on to attribute

Kargbo's shifting stories to his confidence that he would not be

contradicted by the victim, because he knew that she had been

too incapacitated to remember what had happened between them.

At the conclusion of Kargbo's trial, Judge Nicolosi gave

various jury instructions, including these on reasonable doubt:

> Under our constitutions, all defendants in
> criminal cases are presumed to be innocent unless
> proven guilty beyond a reasonable doubt by the State.
> . . .  The Defendant enters this courtroom as an
> innocent person, and you must consider him to be an
> innocent person unless and until the State convinces
> you beyond a reasonable doubt that he is guilty of
> every element of the alleged offense.  And also, in
> this case, the State must prove that the alleged
> victim did not consent.
>
> If, after all of the evidence and arguments, you
> have a reasonable doubt as to the Defendant having
> committed any one or more of the elements of the
> offense, and again, in this case, that the alleged
> victim did not consent to having sexual intercourse,
> then you must find him not guilty.  A reasonable doubt
> is just what the words would ordinarily imply.  The
> use of the word reasonable means simply that the doubt
> must be reasonable rather than unreasonable.  It must
> be a doubt based on reason.  It is not a frivolous or
> fanciful doubt, nor is it one that can easily be
> explained away.  Rather, it is such a doubt based upon
> reason as remains after consideration of all of the
> evidence that the State has offered against it.
>
> The test you must use in this case is this.  If
> you have a reasonable doubt as to whether the State
> has proven any one or more of the elements of the
> crime charged, and in this case, that the alleged
> victim did not consent to having sexual intercourse,
> you must find the Defendant not guilty.

Trial Tr. vol. III, 395:20-396:21.

## Standard

A federal court may grant habeas corpus relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Procedurally, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

Substantively, when a prisoner brings a claim in federal court that "was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d),

> [f]ederal habeas relief may not be granted . . . unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court; or that it "involved an unreasonable application of" such law; or that it "was based on an unreasonable determination of the facts" in light of the record before the state court.

Harrington v. Richter, 562 U.S. 86, 100 (2011) (citations
omitted).  Notwithstanding the deferential standard of review
that normally applies to petitions for habeas corpus relief, if
a claim "'has not been adjudicated on the merits in state
court,'" it is subject to de novo review.  Jaynes v. Mitchell,
824 F.3d 187, 192 (1st Cir.) (citation omitted), cert. denied,
137 S. Ct. 312 (2016).

## Discussion

**I.  Respondent's Motion for Summary Judgment (Doc. No. 89)**

    A.  Claim 11

In Claim 11, petitioner asserts that he was denied the
effective assistance of trial counsel, in violation of his
rights under the Sixth Amendment to the United States
Constitution, in four different ways.  The court considers each
in turn, but begins by setting out the applicable law.

    1.  Ineffective Assistance of Counsel

"To prevail on an ineffective assistance of counsel claim,
[petitioner] must show both that his 'counsel's representation
fell below an objective standard of reasonableness' (the
performance prong), and that 'there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different' (the prejudice prong)."
Rivera v. Thompson, 879 F.3d 7, 12 (1st Cir. 2018) (quoting

Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).
"Failure to meet either prong required to show ineffective
assistance of counsel obviates the claim."  Apicelli v. United
States, No. 18-cv-302-JD, 2018 DNH 085, 2018 U.S. Dist. LEXIS
69306, at *4, 2018 WL 1951192, at *2 (D.N.H. Apr. 23, 2018)
(citing Strickland, 466 U.S. at 697).

       2.   Admission of Evidence

     Petitioner first claims that his trial counsel performed
ineffectively because she "did not move to suppress, or object
to the admission of [his] statements to the police and the swabs
and [clothes] taken from the victim."  Order (Doc. No. 24) 4.

     The court has already ruled that because Kargbo was not in
custody when Det. Inzenga interviewed him, no Miranda warnings
were required, and the use of statements from that interview at
trial did not violate his rights under the Fifth and Fourteenth
Amendments.  See R. & R. (Doc. No. 87) 19-21, approved by Order
(Doc. No. 99).  Thus, a motion to suppress those statements
would likely have failed, and "[a]n attorney's decision to
forego a meritless legal argument does not constitute
ineffective assistance of counsel."  Lane v. United States, No.
14-cv-536-PB, 2015 DNH 042, 2015 U.S. Dist. LEXIS 27571, at *11,
2015 WL 1000368, at *4 (D.N.H. Mar. 6, 2015) (citing Acha v.
United States, 910 F.2d 28, 32 (1st Cir. 1990)).

As for the "swabs and [clothes] taken from the victim,"
petitioner says nothing in his briefing as to how that evidence
was subject to suppression or was otherwise inadmissible.  For
its part, the court can discern no legally protectable interest
that Kargbo had in the samples that were collected from the
victim's body or in the clothing that was taken from her, and
the court's examination of the trial transcript discloses no
infirmity in the manner in which that evidence was admitted at
trial.  Consequently, petitioner's counsel did not provide
ineffective assistance by deciding to forego a challenge to the
admission of the swabs and clothing in the victim's sexual-
assault evidence kit.  See Lane, 2015 U.S. Dist. LEXIS 27571, at
*11, 2015 WL 1000368, at *4.

Because the first portion of petitioner's ineffective-
assistance claim is based upon trial counsel's decision not to
engage in three futile exercises, respondent's motion for
summary judgment should be granted as to that portion of Claim
11.

### 3.    Evidence that Bolstered the State's Case

Next, petitioner claims that his trial counsel performed
ineffectively because she "presented evidence that bolstered the
state's case."  Order (Doc. No. 24) 4.  However, petitioner did
not direct the court to any such evidence in his petition or in
either of his two objections to respondent's motion for summary

judgment.  Accordingly, as to the second portion of Claim 11,
the district judge should grant respondent's motion for summary
judgment.

### 4.  Jury Instructions

Petitioner's third claim is that his trial counsel
performed ineffectively because she "did not object to improper
jury instructions."  Order (Doc. No. 24) 4.  In the discussion
of Claim 11 in his petition, and in his objections to
respondent's motion for summary judgment, petitioner did not
identify the jury instructions to which he objects.  However, in
both of his objections, he discussed all of the claims that have
already been dismissed, including Claim 2, which was a challenge
to the reasonable-doubt instruction that Judge Nicolosi gave.
Thus, the court construes Claim 11 as asserting that
petitioner's counsel performed ineffectively by failing to
object to Judge Nicolosi's reasonable-doubt instruction.

In dismissing Claim 2, this court previously ruled that
petitioner's federal constitutional rights were not violated by
that instruction.  The instruction at issue is consistent with
the model charge approved by the New Hampshire Supreme Court in
State v. Wentworth, 118 N.H. 832, 838-39, 395 A.2d 358, 862-63
(1978), which passed muster in the First Circuit in an appeal of
an order denying a petition for a writ of habeas corpus under
§ 2254, see, e.g., Tsoumas v. New Hampshire, 611 F.2d 412, 413-

14 (1st Cir. 1980).  A similar, shorter instruction, charging the jury that it must not convict unless persuaded of defendant's guilt beyond a reasonable doubt, and then defining reasonable doubt as "'a doubt based upon reason,'" and not "'a fanciful or imaginary doubt nor one based on groundless conjecture,'" has been found not to be error.  United States v. Jones, 674 F.3d 88, 93-94 (1st Cir. 2012) (citations omitted). A contemporaneous objection to the reasonable-doubt instruction would thus likely have failed, which means that petitioner's trial counsel did not provide ineffective assistance by deciding not to object to the charge.  See Lane, 2015 U.S. Dist. LEXIS 27571, at *11, 2015 WL 1000368, at *4.  Accordingly, as to the third portion of Claim 11, the district judge should grant respondent's motion for summary judgment.

### 5.   Mitigating Evidence at Sentencing

Finally, petitioner claims that his trial counsel performed ineffectively because she "did not investigate and present mitigating evidence at [his] sentencing."  Order (Doc. No. 24) 4.  However, petitioner has not, in his petition or in either of his two objections to respondent's motion for summary judgment, identified any mitigating evidence that his counsel should have obtained or presented.  Nor does he say how the introduction of any such evidence might have resulted in a shorter sentence.

Beyond that, petitioner's claim that his counsel did not present mitigating evidence at his sentencing hearing is refuted by the hearing transcript, which shows that petitioner's counsel argued for a time-served sentence, based upon the following mitigating factors: (1) Kargbo had no prior felony convictions; (2) both Kargbo and the victim had consumed an excessive amount of alcohol on the evening in question; (3) Kargbo remained at the hospital while the victim was being treated, out of concern for her; (4) Kargbo cooperated with the police by giving a voluntary interview, answering all of Det. Inzenga's questions, and giving a DNA sample; (5) Kargbo had agreed to be expedited from Florida to New Hampshire rather than resisting extradition; and (6) Kargbo had mental-health issues.  In other words, petitioner's trial counsel actually made a vigorous argument for a lighter sentence based upon a host of mitigating factors. Accordingly, the district judge should grant respondent's motion for summary judgment as to the final portion of petitioner's ineffective-assistance claim.

B.    <u>Claim 12</u>

In Claim 12, petitioner asserts that "[t]he prosecutor's closing argument in [his] trial included improper statements of personal opinion, in violation of [his] Fourteenth Amendment right to due process."  Order (Doc. No. 24) 4.  Nowhere in either the pleading that first asserted Claim 12 (Doc. No. 14)

or petitioner's two objections to respondent's motion for

summary judgment (Doc. Nos. 96, 97) does petitioner identify any

statement in the prosecutor's closing argument to which he

objects.  However, two of those documents include citations to

cases that address, and generally condemn, statements by

prosecutors in closing arguments that express negative opinions

about a defendant's credibility or character.  On that basis,

the court construes Claim 12 as asserting that the prosecutor

violated Kargbo's Fourteenth Amendment right to due process by

saying that Kargbo: (1) lied to Det. Inzenga about not having

sex with the victim at all and not having sex with her outside;

and (2) lied to Det. Inzenga and Officer Roy about how he got

grass stains on the knees of his pants.

    Respondent argues that Claim 12 fails on the merits.  The

court agrees, subjecting the claim to de novo review.

    The First Circuit has explained why it is problematic for a

prosecutor to give her opinion on the credibility of a witness:

> When a prosecutor comments on the veracity of a
> witness, the prosecutor's statement presents two
> discrete risks: (1) of improperly suggesting to the
> jury that the prosecutor's personal opinion has
> evidentiary weight; and (2) of improperly inviting the
> jury to infer that the prosecutor "had access to
> extra-judicial information, not available to the
> jury."

United States v. Saad, 888 F.3d 561, 570 (1st Cir. 2018)

(quoting United States v. Woods, 710 F.3d 195, 203 (4th Cir.

2013)) (additional citation omitted).  Noting that the First
Circuit has never approved of a prosecutor calling a defendant a
liar, see Saad, 888 F.3d at 569 n.2, the Saad court discussed
Obershaw v. Lanman, 453 F.3d 56 (1st Cir. 2006), which, like
this case, involved a § 2254 petition in which the petitioner
claimed a due-process violation based upon comments made by the
prosecutor in a closing argument.

In Obershaw, the court began by sketching the applicable
legal standard:

> [I]t is not enough that the prosecutors' remarks were
> undesirable or even universally condemned.  The
> relevant question is whether the prosecutors' comments
> so infected the trial with unfairness as to make the
> resulting conviction a denial of due process.

453 F.3d at 65 (internal quotation marks omitted) (quoting
Darden v. Wainwright, 477 U.S. 168, 181 (1986)).  The Obershaw
court found no violation of the petitioner's due process rights
in the circumstances of that case:

> First, the prosecutor said, "I suggest to you in no
> uncertain terms" that Obershaw "lied to you" and to
> the police.  In a similar vein, the prosecutor later
> called Obershaw's claim that he did not remember
> killing Brian "an insult to your intelligence . . . as
> jurors."  This theme, that the story Obershaw told the
> jury was a lie, was reiterated several more times.
> Obershaw argues that these statements were nothing
> more than the prosecutor's personal opinion.  Not so;
> it was reasonable to view them as comments based on
> the evidence.  As the SJC noted, there was ample
> evidence that Obershaw told the jury a story that not
> only was different from the one he told the police,
> but also was implausible.  The prosecutor was simply
> urging the jury to draw a particular conclusion from

14

> the evidence, and the comment that the apparent lie
> was "insult[ing]" was, as the SJC observed, "no more
> than a 'rhetorical flourish,' undoubtedly recognizable
> to the jury as such."

Obershaw, 453 F.3d at 66.  Id. (citations omitted).  Applying a

de novo standard of review, the First Circuit concluded that the

prosecutor's comments did not form grounds for habeas relief.

Id.

Here, as in Obershaw, it is reasonable to view the comments

at issue as comments on the evidence.  And, indeed, in addition

to discounting the truthfulness of Kargbo's statements that he

did not have sex with the victim at all or outside, the

prosecutor pointed to the DNA evidence, to Kargbo's subsequent

admission that he did have sex with the victim, to the dirt and

plant material found in the victim's genital area, to the grass

stains on Kargbo's pants, and to Kargbo's subsequent admission

that he might have had sex with the victim outside.  And, in

addition to discounting the truthfulness of Kargbo's statement

that he had stained his pants playing Frisbee, the prosecutor

pointed to the testimony of Kargbo's purported Frisbee partner,

who said he was incapable of playing Frisbee and had no memory

of playing Frisbee with Kargbo.  The prosecutor's citation of

evidence admitted at trial that supported her characterization

of Kargbo's statements as untruthful undermines the suggestion

that she "improperly invit[ed] the jury to infer that [she] had

access to extra-judicial information, not available to the
jury." Saad, 888 F.3d at 570 (internal quotation marks
omitted).  Moreover, she did not couch her appraisals of
Kargbo's truthfulness in a manner that suggested the expression
of a personal opinion that had evidentiary weight.  See id.

In short, the prejudicial effect of a prosecutor's
accusation of untruthfulness "in closing argument depends on
context," Saad, 888 F.3d at 570 (citations omitted), and here,
the context of the prosecutor's statements demonstrates that
they did not "so infect[] the trial with unfairness as to make
[Kargbo's] conviction a denial of due process," Obershaw, 453
F.3d at 65.  Rather, the prosecutor here, like the prosecutor in
Obershaw, "simply urg[ed] the jury to draw a particular
conclusion from the evidence."  Id. at 66.  Accordingly, as to
Claim 12, the district judge should grant respondent's motion
for summary judgment.


## II.  Petitioner's Motions (Doc. Nos. 100-109)

Document Nos. 100 through 109 bear different captions and
request several different forms of relief.  The body of each
motion, however, consists of a similar string citation of
several dozen cases that touch on a wide range of legal issues
such as: (1) the right to obtain Brady materials, see Brady v.
Maryland, 373 U.S. 83 (1963); (2) the right to a jury of one's

peers, see Batson v. Kentucky, 476 U.S. 79 (1986); (3) the right to a Miranda warning, see Miranda v. Arizona, 384 U.S. 436 (1966); and (4) the right to counsel, see Coleman v. Alabama, 399 U.S. 1 (1970).  Petitioner's motions thus reflect a substantial amount of legal research, but contain little in the way of argument specific to matters at issue here.  The court considers the relief requested and the title of each motion in construing its purpose.

    A.   Motions to Reconsider (Doc. Nos. 100, 101, 102, 103)

        1.   Standard

    The court construes Document Nos. 100, 101, 102, and 103 liberally as motions to reconsider the district judge's March 16, 2018 Order (Doc. No. 99), approving the February 21, 2018 Report and Recommendation ("R&R") (Doc. No. 87), and declining to issue a certificate of appealability as to matters at issue in that Order.  To be successful, a motion for reconsideration of an interlocutory order must "demonstrate that the order was based on a manifest error of fact or law."  LR 7.2(d).  Unless the court "has committed an error of law so obvious that it must be corrected or the movant has discovered a new fact that compels a different result, the parties must accept the court's ruling, adjust their arguments accordingly, and seek vindication" in the First Circuit.  Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs, 552 F. Supp. 2d 137, 144 (D.N.H. 2008).

2.    Document Nos. 100, 101

Document Nos. 100 and 101 are motions to reconsider the district judge's denial of a certificate of appealability, set forth in the court's March 16 Order (Doc. No. 99).  A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In Document Nos. 100 and 101, petitioner does not identify anything in the March 16 Order (Doc. No. 99) that constituted a factual or legal error in the district judge's determination that Kargbo had not made a substantial showing of the denial of a constitutional right as to the issues resolved in that Order.  Moreover, for reasons stated in this R&R, petitioner has failed to make a substantial showing of the denial of any constitutional right as to matters at issue in this R&R.  Accordingly, petitioner's motions to reconsider the denial of a certificate of appealability (Doc. Nos. 100, 101) should be denied.

3.    Document Nos. 102, 103

Document No. 102 bears the caption "Petitioner's Motion [for] Leave to [File an] Objection [to] the [Order] Denying Motion for Status of Release (Doc. No. 77)."  Document No. 103 is entitled, "Petitioner's Motion for Status of Release (Doc. [No.] 77)."  The court construes both motions (Doc. Nos. 102,

103) as seeking reconsideration of the March 16 Order (Doc. No. 99), to the extent it denied Document No. 77.

In the February 21, 2018 R&R (Doc. No. 87), approved by the Mar. 16, 2018 Order (Doc. No. 99), this court construed Document No. 77 as asserting that: (1) there was insufficient evidence to support Kargbo's conviction; and (2) the judge and the prosecutor were biased, and discriminated against him because of his race. The court then denied the relief requested in Document No. 77, for reasons stated in the February 21 R&R. As Document Nos. 102 and 103 identify no error in the decision to deny such relief, and this court finds no error in the March 16 Order (Doc. No. 99) or in the R&R (Doc. No. 87), as to the ruling on Document No. 77, the motions for reconsideration (Doc. Nos. 102, 103) of that Order lack merit. Accordingly, the district judge should deny petitioner's motions to reconsider (Doc. Nos. 102, 103) the March 16 Order's denial of the status-of-release motion (Doc. No. 77).

B.    Document Nos. 104, 105, 106, 107, 108, 109

Document No. 104 bears the caption "Petitioner's Motion [for] Leave to Satisfy a State Procedural Requirement." Document No. 105 bears the caption "Petitioner's Motion to [File] a Motion to Satisfy a State Procedural Requirement." Document No. 106 bears the caption "Petitioner's Motion [for] Leave [to file] a Motion [for] Contemporaneous Objection,"

Document No. 107 bears the caption "Petitioner's Motion [for] a Contemporaneous Objection." Document No. 108 bears the caption "Petitioner's Motion [for] Leave to Establish Cause for the Default and Actual Prejudice," and Document No. 109 bears the caption "Petitioner's Motion to Establish Cause for the Default and Actual Prejudice."

This court has not relied on the lack of a contemporaneous objection at trial or any other state procedural default as grounds for denying petitioner any relief in this case. For that reason, the district judge should deny, as moot, petitioner's motions to satisfy a state procedural requirement, motions to assert an objection to matters in evidence in his trial, and motions to establish cause and prejudice (Doc. Nos. 104, 105, 106, 107, 108, 109).

## Certificate of Appealability

Petitioner has failed to make a substantial showing of the denial of any constitutional right. Therefore, the district judge should decline to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Rule 11, Rules Governing Habeas Corpus Cases under Section 2254; First Cir. LR 22.0.

## Conclusion

For the reasons detailed above, the district judge should:

(1) Grant in full respondent's motion for summary judgment (Doc. No. 89);

(2) Deny petitioner's four motions for reconsideration (Doc. Nos. 100, 101, 102, 103);

(3) Deny petitioner's motions to satisfy a state procedural requirement (Doc. Nos. 104, 105), motions for contemporaneous objection (Doc. Nos. 106, 107), and motions to establish cause and prejudice (Doc. Nos. 108, 109);

(4) Decline to issue a certificate of appealability; and

(5) Direct the clerk to enter judgment for respondent, and close this case.

Any objection to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file a specific written objection to the report and recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

June 6, 2018

cc:  Abu B. Kargbo, pro se
     Elizabeth C. Woodcock, Esq.